JOSEPH SALMERI *v.* DEPARTMENT OF
PUBLIC SAFETY
(AC 21106)

Lavery, C. J., and Dranginis and Dupont, Js.

Argued September 17, 2001—officially released June 11, 2002

*Michelle D. Truglia*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, for the appellant (defendant).

*Jeffrey L. Ment*, with whom, on the brief, were *Brenda M. Hamilton* and *Jayme E. Stamper*, for the appellee (plaintiff).

*Opinion*

DUPONT, J. The defendant, the state department of public safety, appeals from the decision of the workers' compensation review board (board) affirming the commissioner's (commissioner) finding and award, which

found that the plaintiff's heart condition described as atrial fibrillation was compensable under General Statutes § 5-145a.[1] The defendant claims that the board improperly determined that (1) there was medical evidence to support the finding that the plaintiff's condition resulted in partial disability, (2) the statutory presumption in § 5-145a was not adequately rebutted and (3) the evidence was sufficient to support a conclusion that the plaintiff was entitled to compensation without the requisite period of incapacity under General Statutes § 31-295 (a).[2] We affirm the decision of the board.

The following facts and procedural history are relevant to our disposition of this appeal. The plaintiff began his employment with the defendant as a state police trooper on May 27, 1994, after successfully passing a physical examination in which he was found to be free of hypertension and heart disease. On December 18, 1996, the plaintiff was seated in the roll call room of his police barracks when he was summoned over the public address system. Before answering the initial call, the plaintiff was summoned again and informed that another state trooper, who had been his classmate at

[1] General Statutes § 5-145a provides in relevant part: "Any condition of impairment of health caused by hypertension or heart disease resulting in total or partial disability or death . . . to any state employee designated as a hazardous duty employee pursuant to an applicable collective bargaining agreement who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of such condition, shall be presumed to have been suffered in the performance of his duty and shall be compensable in accordance with the provisions of chapter 568, except that for the first three months of compensability the employee shall continue to receive the full salary which he was receiving at the time of injury in the manner provided by the provisions of section 5-142. . . ."

[2] General Statutes § 31-295 (a) provides in relevant part: "No compensation shall be payable for total or partial *incapacity* under the provisions of this chapter on account of any injury which does not incapacitate the injured employee for a period of more than three days from earning full wages at his customary employment. . . ." (Emphasis added.)

the state police academy, needed assistance in the field. The plaintiff believed that this meant an emergency situation had developed. When the plaintiff rose from his chair, he experienced a cold feeling, sweating, pain in his arm, tightness in his chest and a rapid heartbeat. The plaintiff believed that he was experiencing the symptoms of a heart attack. The plaintiff was taken to a hospital and treated by Joseph Anthony, a cardiologist.

Anthony testified that he performed extensive tests on the plaintiff and found that his blood pressure was elevated, but that the tests for a heart attack were negative. Anthony's diagnosis was that the plaintiff suffered from atrial fibrillation with rapid ventricular response. Anthony also testified that atrial fibrillation is a rhythm disturbance in the heart, creating rapid electrical activities in the upper part of the heart, which in turn creates an irregular rhythm in the lower part of the heart. Anthony classified atrial fibrillation as an intermittent cardiac condition and gave the plaintiff a 10 percent permanent partial disability rating. He also testified that the plaintiff was more susceptible to future attacks as the result of the episode on December 18, 1996.

The plaintiff was discharged from the hospital the next day without symptoms, and told to take aspirin and to follow-up with his cardiologist. The plaintiff was absent from work for fifteen days.

The plaintiff also was examined by his own physician, Stephen Doctoroff, who has a subspecialty in cardiovascular diseases. Doctoroff testified that he concurred with the diagnosis of paroxysmal atrial fibrillation. Doctoroff stated that atrial fibrillation is a significant abnormality of heart rhythm and although there was no discernable organic damage to the plaintiff's heart, he classified atrial fibrillation as a heart disease. Doctoroff concurred with the 10 percent disability rating given by Anthony.

On August 14, 1998, the plaintiff underwent an independent medical examination by Steven Horowitz, a cardiologist. Horowitz testified that there was no permanent organic damage to the plaintiff's heart, but also gave the plaintiff a 10 percent permanent partial disability rating. After a hearing, the commissioner found that the plaintiff successfully had passed a physical examination upon entry to his employment with the defendant. The commissioner concluded that atrial fibrillation is a cardiac condition and is the equivalent of heart disease. The commissioner also concluded that the plaintiff is susceptible to future episodes of atrial fibrillation. The commissioner concluded that "[w]hile the [plaintiff's] employment did not cause his atrial fibrillation, it did produce symptoms which lit up and permanently aggravated a preexisting condition, which produced a permanent impairment." The commissioner also concluded that atrial fibrillation impairs the normal physiological functioning of the heart and that the plaintiff had a 10 percent permanent partial disability of his heart. Accordingly, the commissioner awarded benefits to the plaintiff.

On appeal to the board, the defendant claimed that the plaintiff's symptoms were too transitory to be considered a disease. On August 9, 2000, the board affirmed the award granted by the commissioner. Citing the testimony of Doctoroff, who labeled atrial fibrillation as a heart disease, and various dictionary definitions,[3] the board concluded that there was sufficient evidence to conclude that atrial fibrillation is a heart disease.

[3] Merriam-Webster's Collegiate Dictionary (10th Ed. 1999) defines disease as "a condition of the living animal or plant body or of one of its parts that impairs normal functioning."

Taber's Cyclopedic Medical Dictionary (16th Ed. 1989) defines disease as "a pathological condition of the body that presents a group of clinical signs and symptoms and laboratory findings peculiar to it and that sets the condition apart as an abnormal entity differing from other normal or pathological body states."

After oral argument in this court, we requested that the parties file simultaneous supplemental briefs addressing the following two issues:

"1. Is General Statutes § 29-4a the sole vehicle of relief for a state police officer within the department of public safety who claims compensation for hypertension or heart disease or may that officer elect to be covered under either General Statutes § 5-145a or General Statutes § 29-4a, and if so, under what authority?

"2. If General Statutes § 29-4a is determined to provide the sole relief, what action can this court take to remedy the fact that the claim should not have been brought and decided under General Statutes § 5-145a?"

Briefs were received on February 1, 2002. There is no case law determinative of the issue of the exclusivity of § 29-4a.[4] The question requires an analysis of the interrelationship among chapter 568, the Workers' Compensation Act, General Statutes §§ 31-275 through 31-355a; chapter 528 entitled "Department of Public

---

[4] General Statutes § 29-4a provides: "Any condition of impairment of health caused by hypertension or heart disease resulting in total or partial disability or death to a member of the Division of State Police within the Department of Public Safety who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of such condition, shall be presumed to have been suffered in the performance of his duty and shall be compensable in accordance with the provisions of section 5-142 for a period of three months. If, at the end of that period, the administrator of the state's workers' compensation claims wishes to contest whether the disability occurred in the actual performance of police duty as defined in subsection (a) of section 5-142, he shall notify the member of his decision. The member or the employee organization may then bring the matter before the workers' compensation commissioner of the appropriate district to determine if the disability is compensable under chapter 568 or subsection (a) of section 5-142. A member who has suffered such total or partial disability shall have the right to elect to receive either (1) the compensation indicated in section 5-142, or (2) the benefits produced under chapter 568 and the state employees retirement system, but not both. The provisions of subsection (a) of section 5-142 shall apply with regard to the timing of such election."

Safety," § 29-4a; and chapter 65 entitled "Disability Compensation and Death Benefits," § 5-145a.

Both the plaintiff and the defendant claim that a state police officer, employed by the department of public safety as a state trooper, may file a claim under either § 5-145a or § 29-4a, and that § 29-4a is not the exclusive remedy for a state police officer who claims an impairment of health caused by hypertension or heart disease.

The plaintiff, as to the second issue posed by this court, states that he did not need to give notice to the workers' compensation commission as to the particular statute under which he claimed to be eligible for compensation. The plaintiff asserts that notice as to the nature of his claim, that is, a description of the injury and how it happened, suffices. The failure to bring the action under § 29-4a, therefore, would not affect compensability. The defendant answered the second issue by stating that if the award were set aside, it is uncertain whether the plaintiff could refile his claim under § 29-4a because of statute of limitation problems. The defendant also claims that even if § 29-4a applies exclusively, the plaintiff could have no remedy because his injury is not compensable under § 5-145a or any other statute.

We conclude that the plaintiff did not have an election of remedies as between § 5-145a or § 29-4a and that he should have pursued his claim under § 29-4a. We further conclude that given the facts of this case, the plaintiff's award should be upheld despite his pursuit of recovery under the wrong statute.[5]

The parties tried the case before the commissioner and argued the appeal before the board as though § 5-

---

[5] The language establishing the presumption in General Statutes § 5-145a mirrors that of General Statutes § 29-4a. We express no view, however, as to whether the presumptions are the same in terms of the procedure for contesting compensation after the first three months.

145a were the controlling statute.[6] The commissioner made a finding that the plaintiff was employed by the department of public safety as a state trooper and falls within the class of employees set forth in § 5-145a. The commissioner's conclusion of the applicability of § 5-145a apparently rested on the fact that the plaintiff was a state trooper. Section 5-145a, by its terms, applies to certain specified state employees, and particularly to members "of the security force or fire department of The University of Connecticut or the aeronautics operations of the Department of Transportation, or to a member of the Office of State Capitol Police or any person appointed under section 29-18 as a special policeman for the State Capitol building and grounds, the Legislative Office Building and parking garage and related structures and facilities, and other areas under the supervision and control of the Joint Committee on Legislative Management," and to certain other state personnel. General Statutes § 5-145a.

The only category of state employee within § 5-145a that both the plaintiff and the defendant claim makes the statute an appropriate vehicle under which to proceed is that the plaintiff is "designated as a hazardous duty employee pursuant to an applicable collective bargaining agreement . . . ." General Statutes § 5-145a. In this case, there is nothing in the record to show that the plaintiff was a hazardous duty employee pursuant to an applicable collective bargaining agreement.

Section 5-145a was enacted in 1963 to cover security forces employed by the University of Connecticut. At that time, one of the proponents of the bill stated that this bill "is patterned after a similar one that we passed in 1959 in regards to state police." 10 H.R. Proc., Pt. 12,

---

[6] Ordinarily, questions not raised at trial are not reviewed on appeal except that the improper interpretation or application of statutes may be reviewed under the plain error doctrine. *State* v. *Velasco*, 253 Conn. 210, 218 n.9, 751 A.2d 800 (2000).

1963 Sess., p. 4705, remarks of Representative Andrew Repko; see also 10 H.R. Proc., Pt. 9, 1963 Sess., p. 3624. At the time § 5-145a was enacted, § 29-4a had existed since 1959. Section 5-145a later was amended in 1985 to add those state employees designated as hazardous duty employees pursuant to an applicable collective bargaining agreement.

It is unlikely that the legislature would have enacted redundant legislation in 1985 to cover state troopers who already were covered by § 29-4a and who already were beneficiaries of the same presumption. Section 29-4a applies exclusively to members of the division of state police within the department of public safety. Both § 5-145a and § 29-4a use the same language in providing compensability for those who had "successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of such condition," by giving them the presumption that the condition was "suffered in the performance of [their] duty . . . ." See General Statutes §§ 5-145a and 29-4a.

The legislature is presumed to have knowledge of existing legislation. *State* v. *Denson*, 67 Conn. App. 803, 811, 789 A.2d 1075, cert. denied, 260 Conn. 915, 797 A.2d 514 (2002). It must be assumed that all wage loss statutes are coordinated to obtain one cohesive general system for the claims of employees. *Middletown* v. *Local 1073*, 1 Conn. App. 58, 63, 467 A.2d 1258 (1983), cert. dismissed, 192 Conn. 803, 471 A.2d 244 (1984). When there is an itemized list of persons or situations that bring a statute into play, it connotes a legislative intent to exclude those situations or persons not listed. *McNulty* v. *Stamford*, 37 Conn. App. 835, 840, 657 A.2d 1126 (1995). The state employees covered by § 5-145a are all members of groups that engage in hazardous duties and who are not the subject of other legislation specifically applicable to them. Section 29-4a was never amended to refer to § 5-145a. It unambiguously refers

to a "member of the Division of State Police within the Department of Public Safety . . . ." General Statutes § 29-4a. Section 5-145a refers to other categories of state employees.

Section 29-4a is contained within title 29 entitled "Public Safety and State Police," and within chapter 529 entitled "Division of State Police." Section 5-145a, in contrast, is contained in title 5 entitled "State Employees," and within chapter 65 entitled "Disability Compensation and Death Benefits." Both the hazardous duty employees of § 5-145a and the state police employees of § 29-4a are granted a presumption that the hypertension or heart disease in question was suffered in the performance of duty if the employee successfully passed a physical examination that did not reveal hypertension or heart disease. In determining whether a state trooper may choose whether to bring a claim pursuant to § 5-145a or § 29-4a, we look to cases involving alternate routes of workers' compensation benefits.

It is clear that a member of a municipal fire or police department hired before July 1, 1996, could choose to be covered under either chapter 568, the Workers' Compensation Act, or General Statutes § 7-433c.[7] See

---

[7] General Statutes § 7-433c provides in relevant part: "(a) Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the

*Hyatt* v. *Milford*, 57 Conn. App. 472, 477, 749 A.2d 650, cert. denied, 254 Conn. 901, 755 A.2d 218 (2000). Section 29-4a specifically was enacted for the protection of state police officers who suffer hypertension or heart disease, and was intended to equal the benefits given to municipal police officers and municipal firefighters then existing. See 8 H.R. Proc., Pt. 7, 1959 Sess., pp. 2668, 2679–80. Section 7-433c was not intended to provide its beneficiaries with dual dollar benefits, but to eliminate two of the basic requirements for coverage under the Workers' Compensation Act, namely the causal connection between hypertension and heart disease and the employment, and the requirement that the illness was suffered during the course of employment. *Middletown* v. *Local 1073*, supra, 1 Conn. App. 63.

This case presents no issue as to the ability of the plaintiff to obtain a greater amount of compensation by framing his claim pursuant to § 5-145a rather than § 29-4a. The plaintiff does not dispute the amount of compensation that he was awarded. The defendant claims that no compensation at all should have been awarded. The defendant does not claim, in the alternative, that the monetary award should be altered or was calculated incorrectly. This lack of a dispute as to the amount of the award relates to our conclusion that given the facts of this case, the use of § 5-145a as the plaintiff's avenue of relief, instead of § 29-4a, makes little or no difference.

Although there are fact specific cases in which a statutory election makes a monetary difference, this case is not one of them. See *Jones* v. *Mansfield Training School*, 220 Conn. 721, 601 A.2d 507 (1992). The

course of his employment, and was suffered in the line of duty and within the scope of his employment. . . .

"(b) Notwithstanding the provisions of subsection (a) of this section, those persons who began employment on or after July 1, 1996, shall not be eligible for any benefits pursuant to this section."

typical conflict as to which statute to employ in the calculation of benefits is between the workers' compensation benefits of chapter 568 and another statute that gives special enhanced benefits to certain employees who in the daily course of performing their duties work in an atmosphere of emotion and stress, statutes such as General Statutes §§ 29-4a, 7-433c, 5-142a, 5-144, 5-145a, 5-145b and 5-145c. Ordinarily, the statutes designed to give special enhanced benefits to some employees provide greater compensation than that available under chapter 568. If, however, they do not, the employees covered under the special benefit statutes may elect to receive benefits under chapter 568; *Jones* v. *Mansfield Training School,* supra, 721; and may also receive benefits arising from part-time employment elsewhere. See *Trinkley* v. *Ella Grasso Regional Center,* 220 Conn. 739, 747, 601 A.2d 515 (1992). The present case involves a conflict between two statutes, both of which give enhanced benefits, but does not involve a conflict in the amount of compensation due.

Although we conclude that the claim for compensation should have been brought pursuant to § 29-4a, we recognize that the parties, the compensation commissioner and the board all have assumed that the appropriate statute was § 5-145a. The plaintiff in this case advised the defendant that his claim was for compensation for an impairment of health caused by hypertension or heart disease. There is no requirement in General Statutes § 31-294c, entitled in part, "Notice of claim for compensation," that notice of injury by an employee should include a statutory reference.

Section 31-294c (a) provides in relevant part: "Notice of a claim for compensation may be given to the employer or any commissioner and shall state, in simple language, the date and place of the accident and the nature of the injury resulting from the accident, or the

date of the first manifestation of a symptom of the occupational disease and the nature of the disease, as the case may be, and the name and address of the employee . . . ." Section 31-294c is a portion of the Workers' Compensation Act, and it is that act that provides the procedural avenue for all workers' compensation benefit statutes. *Middletown* v. *Local 1073*, supra, 1 Conn. App. 65–66.

Applying *Tedesco* v. *Stamford*, 215 Conn. 450, 576 A.2d 1273 (1990), on appeal after remand, 222 Conn. 233, 610 A.2d 574 (1992), and its progeny, such as *Travelers Ins. Co.* v. *Namerow*, 257 Conn. 812, 778 A.2d 168 (2001), and *Stafford Higgins Industries, Inc.* v. *Norwalk*, 245 Conn. 551, 715 A.2d 46 (1998), we conclude that any deficiency in the plaintiff's failure to claim or to argue for a right to recover under the applicable statute should be overlooked. The state employer had sufficient notice of the facts and the issues to be tried, and neither it nor the plaintiff was prejudiced by the failure to proceed under § 29-4a.

The practical difference between § 29-4a and § 5-145a is not implicated in this case because neither party claims that the amount of compensation was incorrectly established. The dispute is over whether the plaintiff should collect anything at all, because, according to the defendant, there was no medical evidence to support a partial disability, the plaintiff had not been incapacitated for a sufficient time and the presumption that the condition was suffered in the performance of the plaintiff's duties was rebutted by the defendant. All of these items of dispute would exist regardless of whether § 5-145a or § 29-4a governed.[8]

---

[8] We are not concerned in this case with whether the presumption of suffering the condition in the performance of the plaintiff's duties is irrebuttable for a given period of time under either General Statutes §§ 29-4a or 5-145a. If it were read as giving the plaintiff an irrebutable presumption, it would be unconstitutional under *Ducharme* v. *Putnam*, 161 Conn. 135, 285 A.2d 318 (1971). The board has stated that the presumption of both statutes

Although § 29-4a should have been the appropriate statutory basis for the plaintiff's claim, on the facts of this case, we will review the case as tried by the parties. We therefore turn to the issues as originally briefed by the parties.

Our standard of review for workers' compensation appeals is well established. "The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Besade* v. *Interstate Security Services*, 212 Conn. 441, 449, 562 A.2d 1086 (1989). "[A]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board."[9] *Duni* v. *United Technologies Corp./Pratt & Whitney Aircraft Division*, 239 Conn. 19, 24–25, 682 A.2d 99 (1996).

I

The defendant first claims that the board improperly affirmed the commissioner's finding and award because the evidence did not support a finding that the plaintiff was protected by § 5-145a. Specifically, the defendant argues that the plaintiff's condition did not result in "total or partial disability or death" as required by § 5-145a.[10] The defendant argues that there should not have

is not a conclusive one. *DiBenedetto* v. *State*, 9 Conn. Workers' Comp. Rev. Op. 1 (1991).

[9] The board, in discussing General Statutes § 5-145a within the context of a claim brought by a police officer employed at the University of Connecticut Health Center, stated that § 5-145a parallels General Statutes § 29-4a, "which gives the same presumption to state policemen." *DiBenedetto* v. *State*, 9 Conn. Workers' Comp. Rev. Op. 1, 3 (1991). Impliedly, the board has thus interpreted § 29-4a as the avenue of recovery for state police officers not specifically enumerated in § 5-145a.

[10] Both General Statutes §§ 29-4a and 5-145a require a "total or partial disability or death . . . ."

For the purposes of our discussion, we treat the plaintiff as though he were a hazardous duty state employee pursuant to § 5-145a, except where noted.

been a finding of partial disability when the plaintiff was hospitalized for only one day and released as asymptomatic. The defendant also argues that the plaintiff could not be disabled when all three physicians testified that there was no organic damage to the plaintiff's heart. We are not persuaded by the defendant's argument.

The defendant does not dispute the commissioner's finding that the plaintiff successfully passed a physical examination upon entry into employment, which examination failed to reveal any evidence of hypertension or heart disease. The plaintiff here suffered from "[a]*ny condition* of impairment of health caused by hypertension or heart disease"; (emphasis added) General Statutes §§ 5-145a and 29-4a; because the medical testimony supports the conclusion that the plaintiff's atrial fibrillation is a heart disease. The question is whether that condition resulted in total or partial disability.

Our Supreme Court has stated that a defendant's argument "that there must be distinct damage to the heart before compensation may be awarded is hairsplitting. Such arcane distinctions of possible medical consequences of a stressful impact on the human cardiovascular system would necessarily introduce legalistic criteria into the field of medicine." *McDonough* v. *Connecticut Bank & Trust Co.*, 204 Conn. 104, 115, 527 A.2d 664 (1987).

The record demonstrates that all three physicians rated the plaintiff as having a 10 percent permanent partial disability rating due to his heart condition. The evidence presented was that the rating was based on guidelines set by the American Medical Association, and each physician attributed the 10 percent rating solely to the plaintiff's heart condition. The commissioner did not abuse his discretion by concluding that the 10 per-

cent rating was compensable as a permanent partial disability of the plaintiff's heart.

## II

The defendant's second claim on appeal is that the statutory presumption in § 5-145a was rebutted.[11] The defendant claims that the plaintiff did not prove that his employment caused his heart condition. The defendant also argues that the commissioner's conclusion that the claimant's employment "did not cause [the plaintiff's] atrial fibrillation, [but] it did produce symptoms which lit up and permanently aggravated a preexisting condition which produced a permanent impairment," was sufficient to rebut the statutory presumption in § 5-145a. The defendant argues that because the statutory presumption was successfully rebutted, the plaintiff must, but did not, produce sufficient evidence to prove that his employment caused his condition or that he suffered from an occupational disease. We conclude that the commissioner correctly concluded that the statutory presumption in § 5-145a was not rebutted.

There is a paucity of Connecticut appellate cases of which we are aware that even hint at the parameters of the language, "shall be presumed to have been suffered in the performance of his duty" as used in either § 29-4a or § 5-145a.[12] Section 5-145a provides a benefit

---

[11] The language of General Statutes §§ 5-145a and 29-4a is exactly the same as to the presumption, namely, "shall be presumed to have been suffered in the performance of his duty . . . ."

[12] Temporary total disability benefits for cardiovascular disease, in accordance with General Statutes § 5-145a, have been ordered by a workers' compensation commissioner; see *Gartrell* v. *Dept. of Correction*, 259 Conn. 29, 787 A.2d 541 (2002); but there was no discussion in the appeal from the compensation review board of the word "presumes" as used in § 5-145a. *Gartrell* involved a correctional officer in the department of correction who clearly was covered by § 5-145a. *Tremblay* v. *Connecticut State Employees' Retirement Commission*, 170 Conn. 410, 365 A.2d 1125 (1976), involved a fire and security officer at Bradley International Airport who, by virtue of his employment, specifically was covered by § 5-145a. The court noted that § 5-145a contains a presumption that an impairment of health caused by hypertension or heart disease was suffered in the performance of duty. Id.,

for the heart disease of those employees who work in designated categories of employment legislatively determined to be especially stressful and who had a physical examination at the time employment commenced showing no evidence of heart disease. If these preconditions are met, "their combined effect is to create a presumption that subsequent heart disease has been suffered in the performance of his duty." (Internal quotation marks omitted.) *Phipps* v. *Niejadlik*, 175 Conn. 424, 430, 399 A.2d 1256 (1978).

Cases arising under § 7-433c,[13] which covers municipal police and firefighters, as opposed to the state police or those covered by § 5-145a, are instructive in this appeal. Although § 7-433c (b) no longer provides the benefit of § 7-433c (a), both § 29-4a and § 5-145a still provide such a presumption. We, therefore, discuss the presumption of §7-433c as it existed after *Ducharme* v. *Putnam*, 161 Conn. 135, 285 A.2d 318 (1971), and before the passage of §7-433c (b).

"General Statutes § 7-433c gives a special compensation to those who qualify, in the sense that they have no burden of proof that the disease resulted from the employee's occupation or that it occurred in the course of employment. The mere fact that the employee has hypertension or heart disease and dies or is disabled because of it is all that is necessary. The employee does not need to prove that his heart disease is causally connected to his employment." *Middletown* v. *Local 1073*, supra, 1 Conn. App. 62. If the employee successfully passed a physical examination upon entering employment, which examination failed to reveal any evidence of such condition, there need be no causal

414. *Tremblay*, without defining the presumption, held that under § 5-145a, the benefit of the presumption can only be extended to those who successfully passed a physical examination *and* whose examination did not reveal *any* evidence of hypertension or heart disease.

[13] See footnote 7.

connection between the employment and the disease.
Id.

The benefits of § 7-433c constitute a special compensation to qualifying employees in that they are not required to prove that the heart disease is causally connected to employment, which such employees would normally have to prove. *Carriero* v. *Naugatuck*, 243 Conn. 747, 754–55, 707 A.2d 706 (1998). It is assumed that regularly paid members of municipal police departments, who successfully passed a physical examination upon entering service, suffered any subsequent hypertension or heart disease in the line of duty. *King* v. *Sultar*, 253 Conn. 429, 440, 754 A.2d 782 (2000).

Section 7-433a as amended in 1969 established a conclusive presumption,[14] which was declared unconstitutional as violative of the due process clauses of the state and federal constitutions in *Ducharme* v. *Putnam*, supra, 161 Conn. 135. The legislature promptly rewrote the statute as § 7-433c, after the case was decided, to do what the courts could not. The legislature "rewrote the statute by simply providing special compensation, or even an outright bonus, to qualifying policemen and firemen." *Grover* v. *Manchester*, 168 Conn. 84, 88, 357 A.2d 922, appeal dismissed, 423 U.S. 805, 96 S. Ct. 14, 46 L. Ed. 2d 26 (1975). In other words, once the conditions of § 7-433c are met, benefits must be paid by the

[14] General Statutes (Rev. to 1972) § 7-433a provides in relevant part: "Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance, for the purpose of the adjudication of claims for the payment of benefits under the provisions of chapter 568 and the contributory or noncontributory retirement systems of any municipality or the state, any condition or impairment of health occurring on duty or off duty, caused by hypertension or heart disease resulting in death or temporary or permanent, total or partial disability to a uniformed member of a paid fire department or a regular member of a paid police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of such condition, shall be *conclusively presumed* to be a personal injury which arose out of and in the course of his employment, and which was suffered in the line of duty and within the scope of his employment . . . ." (Emphasis added.)

municipality in accordance with the Workers' Compensation Act. *King* v. *Sultar*, supra, 253 Conn. 429. Section 7-433c requires the payment of compensation to municipal police officers who have successfully passed a physical examination that failed to reveal any evidence of hypertension or heart disease and who are subsequently disabled by either condition. *Bakelaar* v. *West Haven*, 193 Conn. 59, 68, 475 A.2d 283 (1984).

A presumption similar to the one contained in the now repealed § 7-433a is found in both § 5-145a and § 29-4a to cover state police officers and state employees in hazardous duty occupations such as department of correction officers. Both § 5-145a and § 29-4a, however, use the phrase "shall be presumed" and do not include the phrase "conclusively presumed" as was the case in § 7-433a, which *Ducharme* declared unconstitutional.

A statutory presumption requires a rational connection between the fact proved and the ultimate fact presumed. See H. Ashford & D. Risinger, "Presumptions, Assumptions, and Due Process in Criminal Cases: A Theoretical Overview," 79 Yale L.J. 165, 166 (1989). A presumption is equivalent to prima facie proof that something is true. It may be rebutted by sufficient and persuasive contrary evidence. A presumption in favor of one party shifts the burden of persuasion to the proponent of the invalidity of the presumed fact. That burden is met when it is more probable than not that the fact presumed is not true. *Anderson* v. *Litchfield*, 4 Conn. App. 24, 28, 492 A.2d 210 (1985).

In this case, the defendant has not met its burden by showing that the presumption was rebutted. The board has stated that "the initial burden of persuasion is shifted by the presumption, thereby requiring the employer to present evidence to contest compensability. The trial commissioner must, of course, find this evidence sufficiently credible to meet that burden of

persuasion before the statutory presumption can be said to have been successfully rebutted. Insubstantial or suspect evidence cannot perform the same function. . . . [I]t is not our goal to render § 5-145a 'virtually worthless' by vitiating the force of its presumption." *Horn* v. *State*, 4177 CRB-3-00-1 (February 22, 2001).

The burden is on the employer to demonstrate that the plaintiff's condition or disease was caused by factors outside his employment. The defendant did not present evidence that the plaintiff's condition was caused by conditions other than those of his employment.

### III

The defendant's final claim is that the evidence did not support a conclusion that the plaintiff was entitled to compensation under the workers' compensation statutes for a period of incapacity because the plaintiff was hospitalized only for one day. The defendant states that under § 31-295 (a),[15] workers' compensation should not be awarded if the plaintiff was not incapacitated for more than three days.

The defendant incorrectly applies § 31-295 (a) to the present case. The commissioner's award was not based on "total or partial *incapacity*"; (emphasis added) General Statutes § 31-295 (a); but was based on a condition of impairment of health caused by hypertension or heart disease resulting in total or partial *disability*. See General Statutes §§ 5-145a and 29-4a. Incapacity is a separate and distinct concept apart from disability or loss of a member or organ. *Dombrozzi* v. *Gross & Co.*, 112 Conn. 627, 628–29, 153 A. 780 (1931).

The incapacity to work is different from the loss of the use of *a part of a body. Panico* v. *Sperry Engineering Co.*, 113 Conn. 707, 710, 156 A. 802 (1931). A

[15] See footnote 2.

permanent partial incapacity lessens earning power, whereas a permanent partial disability is a handicap throughout life. Id., 710–11. We therefore do not agree with the defendant.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.