BRIAN JONES *v.* TOWN OF REDDING ET AL.
(SC 18445)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.

Argued February 8—officially released May 25, 2010

*Michael N. Lavelle*, with whom, on the brief, was *Maria E. Garcia*, for the appellant (named defendant).

*Andrew J. Morrissey*, for the appellee (plaintiff).

*Scott Wilson Williams*, with whom, on the brief, was *Maribeth M. McGloin*, for the appellee (defendant Wausau Insurance Company).

*Opinion*

NORCOTT, J. The principal issue in this appeal is whether the workers' compensation commission (commission) has continuing jurisdiction under General Statutes § 31-315[1] to open and modify an approved voluntary agreement (agreement) for benefits that was premised on a subject matter jurisdictional mistake of law. The named defendant, the town of Redding (defen-

---

[1] General Statutes § 31-315 provides in relevant part: "Any award of, or voluntary agreement concerning, compensation made under the provisions of this chapter . . . shall be subject to modification in accordance with the procedure for original determinations, upon the request of either party . . . whenever it appears to the compensation commissioner, after notice and hearing thereon, that the incapacity of an injured employee has increased, decreased or ceased, or that the measure of dependence on account of which the compensation is paid has changed, or that changed conditions of fact have arisen which necessitate a change of such agreement, award or transfer in order properly to carry out the spirit of this chapter. The commissioner shall also have the same power to open and modify an award as any court of the state has to open and modify a judgment of such court. The compensation commissioner shall retain jurisdiction over claims for compensation, awards and voluntary agreements, for any proper action thereon, during the whole compensation period applicable to the injury in question."

dant),[2] appeals[3] from the decision of the compensation review board (board), reversing the decision of the workers' compensation commissioner for the seventh district (commissioner), that had, in accordance with the defendant's request, deemed the parties' agreement providing benefits to the plaintiff, Brian Jones, under the heart and hypertension act, General Statutes § 7-433c,[4] void ab initio because of a mistaken assumption regarding the plaintiff's employment status, and also transformed that agreement into one for benefits under

[2] On October 29, 2007, the workers' compensation review board (board) granted the motion of Wausau Insurance Company (Wausau), the workers' compensation insurance carrier for the defendant, to intervene in this matter as a party defendant. Wausau has filed a brief in this appeal, joining the defendant in contending that the workers' compensation commissioner lacked the authority to transform the award into one for benefits under the Workers' Compensation Act, General Statutes § 31-275 et seq., and that, in doing so, she violated its due process rights because she made that finding without giving the parties prior notice or an opportunity to be heard on the issue. We note, however, that we do not reach this claim. See footnote 15 of this opinion. All references herein to the defendant are to the named defendant.

[3] The defendant appealed from the decision of the board to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] General Statutes § 7-433c provides in relevant part: "(a) Notwithstanding any provision of chapter 568 . . . in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he . . . shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment . . . . The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 . . . except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. . . ."

the Workers' Compensation Act, General Statutes § 31-275 et seq., contained in chapter 568 of the General Statutes (chapter 568). On appeal, the defendant claims that the board improperly concluded that the commission lacked continuing jurisdiction over the agreement because: (1) the plaintiff's failure to challenge the commissioner's decision deprived the board of jurisdiction to consider that aspect of the decision; and (2) given that the agreement was void ab initio for lack of subject matter jurisdiction since the plaintiff never qualified for benefits under § 7-433c, the defendant properly had sought to void the agreement by filing a motion for modification. We disagree with the defendant and, therefore, affirm the board's decision.

The record reveals the following undisputed facts and procedural history. The defendant hired the plaintiff as a police officer in August, 1985. Pursuant to § 7-433c, the plaintiff passed a preemployment physical examination that did not reveal any evidence of hypertension or heart disease. In June, 2002, the plaintiff's personal physician diagnosed him with hypertension, and on July 19, 2002, the plaintiff filed a notice of claim against the defendant. On March 13, 2003, the plaintiff and the defendant entered into an agreement stipulating that the parties were subject to the provisions of § 7-433c and establishing the plaintiff's average weekly wage and weekly compensation rate. On March 20, 2003, the plaintiff's treating cardiologist, Joseph Robert Anthony, concluded that the plaintiff had sustained a 35 percent impairment of the heart. The defendant's independent medical examiner, Ronald Raymond, determined, however, that the plaintiff had sustained a 30 percent impairment of the heart, and the parties thereafter reached a compromised rating of 32.5 percent impairment. In accordance with this rating, the parties entered into a supplemental voluntary agreement on November 19, 2003, wherein the plaintiff was awarded 169 weeks of

permanent partial disability benefits retroactive to and commencing on March 20, 2003.[5]

In March, 2003, when the parties entered into the original agreement, they had assumed that the defendant's police department was a "paid municipal police department," as that term is utilized in § 7-433c (a); see footnote 4 of this opinion; thereby conferring jurisdiction on the commission to approve the agreement, which it did, pursuant to General Statutes § 31-296 (a).[6] On December 8, 2003, however, the board issued a decision in the case *Genesky* v. *East Lyme*, No. 4600, CRB-8-02-12 (December 8, 2003), aff'd, 275 Conn. 246, 881 A.2d 114 (2005),[7] concluding that the East Lyme

[5] Pursuant to this supplemental agreement, the plaintiff received a lump sum payment of $20,005.30, on or about October 24, 2003, and was scheduled to receive additional weekly payments of $571.58 until December, 2003. We note that, for purposes of this appeal, we refer to the original voluntary agreement and the supplemental voluntary agreement, collectively, as the "agreement."

[6] General Statutes § 31-296 (a) provides in relevant part: "If an employer and an injured employee . . . at a date not earlier than the expiration of the waiting period, reach an agreement in regard to compensation, such agreement shall be submitted in writing to the commissioner by the employer with a statement of the time, place and nature of the injury upon which it is based; and, if such commissioner finds such agreement to conform to the provisions of this chapter in every regard, the commissioner shall so approve it. A copy of the agreement, with a statement of the commissioner's approval, shall be delivered to each of the parties and thereafter *it shall be as binding upon both parties as an award by the commissioner.* . . ." (Emphasis added.) Although § 31-296 was the subject of certain amendments in 2007; see Public Acts 2007, No. 07-80, § 1; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision.

[7] In *Genesky* v. *East Lyme*, supra, 275 Conn. 248, this court affirmed the decision of the board, concluding that a constable is not a "regular member of a paid municipal police department" as that term is used in § 7-433c (a), and that the law enforcement arrangements that the town of East Lyme had adopted, including the establishment of a constabulary, the utilization of state police officers—which is allowed only if a municipality lacks an organized police force—and the designation of the first selectman as the chief of police indicated that the town did not have a paid municipal police department of which the plaintiff was a member. Id., 266–67.

police department was not organized in accordance with General Statutes § 7-274,[8] and that, therefore, § 7-433c did not apply to the parties therein. Thereafter, the defendant determined that the organization of its police department was virtually identical to that of the East Lyme police department, and on January 30, 2004, decided to cease payments to the plaintiff and move, pursuant to § 31-315, to modify the agreement that had been entered into by the parties. The defendant sought a revocation of the agreement for lack of subject matter jurisdiction on the ground that it was not subject to § 7-433c because "[t]here is no elected or appointed board of police commissioners or any of the other mechanisms for organizing and maintaining a police force as articulated in [§ 7-274]." Specifically, the defendant contended that, because *Genesky* was a "clarification of the scope of [§] 7-433c," it represented a "changed [condition] of fact," which necessitated a modification of the award, pursuant to § 31-315.

The commissioner held this matter in abeyance until the outcome of the appeal to this court in *Genesky*, which had affirmed the board's decision; see footnote 7 of this opinion; after which the matter was presented to the commissioner at a formal hearing on August 17,

---

[8] General Statutes § 7-274 provides: "Any town may, by ordinance, establish a board of police commissioners to be elected, in accordance with the provisions of section 9-201 or to be appointed by the council or board of directors of a town, the common council or other body empowered to make ordinances of a city, the board of burgesses of a borough or the board of selectmen of a town not having a council or board of directors, provided in a town having both a board of selectmen and a representative town meeting such ordinance may designate the representative town meeting as the appointing authority, for the purpose of organizing and maintaining a police department in such town. Such board shall consist of three, five or seven electors, all of whom shall be resident taxpayers of such town. Such commissioners shall be sworn to the faithful performance of their duties and shall serve without compensation, but their actual expenses and disbursements incurred in the performance of their duties shall be paid from the town treasury."

2006, upon a stipulation of facts entered into the record. On or about April 11, 2007, the commissioner issued her decision on the defendant's motion to modify the agreement, reaching four legal conclusions, namely, that: (1) the commission retained continuing jurisdiction over the matter pursuant to § 31-315; (2) because of the incorrect assumption that the defendant's police department was a municipal police department organized under § 7-274 and that the plaintiff was, therefore, a "regular member of a paid municipal police department" under § 7-433c (a), the original and supplemental agreements were void ab initio at the time they were presented to the respective presiding trial commissioners; (3) because General Statutes § 31-294c (a)[9] does not require that a claimant recite, in the notice of claim, the specific statutory basis for the claim, under *Salmeri* v. *Dept. of Public Safety*, 70 Conn. App. 321, 326–34, 798 A.2d 481, cert. denied, 261 Conn. 919, 806 A.2d 1055 (2002),[10] the defendant had received adequate notice of

---

[9] General Statutes § 31-294c (a) provides in relevant part: "No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury . . . . Notice of a claim for compensation may be given to the employer or any commissioner and shall state, in simple language, the date and place of the accident and the nature of the injury resulting from the accident, or the date of the first manifestation of a symptom of the occupational disease and the nature of the disease, as the case may be, and the name and address of the employee and of the person in whose interest compensation is claimed. . . ."

[10] In *Salmeri* v. *Dept. of Public Safety*, supra, 70 Conn. App. 332, the Appellate Court stated: "Although we conclude that the claim for compensation should have been brought pursuant to [General Statutes] § 29-4a, we recognize that the parties, the . . . commissioner and the board all have assumed that the appropriate statute was [General Statutes] § 5-145a. The plaintiff in this case advised the defendant that his claim was for compensation for an impairment of health caused by hypertension or heart disease. There is no requirement in § 31-294c, entitled in part, 'Notice of claim for compensation,' that notice of injury by an employee should include a statutory reference."

the plaintiff's heart and hypertension claim simply by virtue of the plaintiff's filing of the notice of claim, and because "the parties' stipulated agreements support the assertion that neither party was in disagreement as to the compensability of the claim or the amount of compensation due thereunder," the claim should be administered as though it had been brought pursuant to chapter 568; and (4) consequently, the defendant improperly had terminated the plaintiff's benefits in violation of General Statutes § 31-296 (b)[11] and, therefore, further proceedings were needed to determine the amount of benefits, including interest and attorney's fees, currently due and payable to the plaintiff.

The defendant then appealed from the commissioner's decision to the board, which reversed the decision, concluding that the commission did not have continuing jurisdiction over the agreement. under § 31-315. The board first determined that its decision in *Genesky* did not represent a clarification of the scope of § 7-433c, as claimed by the defendant, but, rather, that the scope

[11] General Statutes § 31-296 (b) provides in relevant part: "Before discontinuing or reducing payment on account of total or partial incapacity under any such agreement, the employer or the employer's insurer, if it is claimed by or on behalf of the injured employee that such employee's incapacity still continues, shall notify the commissioner and the employee, by certified mail, of the proposed discontinuance or reduction of such payments. Such notice shall specify the reason for the proposed discontinuance or reduction and the date such proposed discontinuance or reduction will commence. No discontinuance or reduction shall become effective unless specifically approved in writing by the commissioner. . . . In any case where the commissioner finds that an employer has discontinued or reduced any payments made in accordance with this section without the approval of the commissioner, such employer shall be required to pay to the employee the total amount of all payments so discontinued or the total amount by which such payments were reduced, as the case may be, and shall be required to pay interest to the employee, at a rate of one and one-quarter per cent per month or portion of a month, on any payments so discontinued or on the total amount by which such payments were reduced, as the case may be, plus reasonable attorney's fees incurred by the employee in relation to such discontinuance or reduction."

of the statute previously had been subject to judicial review by the Appellate Session of the Superior Court in *Zimmer* v. *Essex*, 38 Conn. Sup. 419, 449 A.2d 1053 (1982). The board also noted that, even if the defendant was correct that *Genesky* was a clarification of the scope of § 7-433c, opening the agreement was improper because there were no changed conditions of fact, and the equitable considerations contemplated by § 31-315 that permit a trier of fact to extend relief did not apply to mistakes of law in the present case. Further, the board concluded that, because § 31-315 did not apply, the commissioner did not have the authority to void the agreement for lack of jurisdiction when there was no evidence "that the [defendant] [was] prevented from contesting the issue of subject matter jurisdiction by fraud, accident, mistake, surprise or improper management of the opposite party." (Internal quotation marks omitted.) Thus, the board noted that, at the time the original and supplemental agreements were presented to the respective presiding commissioners, although the parties erroneously had assumed that § 7-433c applied, "given the stipulated facts as presented at the time of signing, the decisions of the respective . . . commissioners to approve the [agreements] were eminently reasonable."[12] Accordingly, the board reversed the decision of the commissioner and remanded the matter for additional proceedings.[13] This appeal followed.[14]

[12] The board also noted that, although the issue of subject matter jurisdiction could be raised at any time, the defendant "had ample opportunity to investigate and contest the issue of subject matter jurisdiction prior to entering into the disputed agreements," and that, in accordance with this court's decision in *Gerte* v. *Logistec Connecticut, Inc.*, 283 Conn. 60, 924 A.2d 855 (2007), public policy supports leaving the agreement undisturbed.

[13] Pursuant to General Statutes § 31-301c (b), the board also awarded the plaintiff interest for any benefits due to him from the defendant that remained unpaid pending appeal.

[14] On or about December 10, 2008, the defendant moved for an articulation of the board's decision, specifically asking the board to clarify why it chose to review the first and second conclusions of the commissioner when they were not properly before it. In ruling on the motion, the board stated that those conclusions were properly before it because, inter alia: "[1] given the

On appeal, the defendant first claims that the board did not have jurisdiction to review the commissioner's first two conclusions—namely, that the commission had continuing jurisdiction over the agreement and that such agreement was void ab initio—because the plaintiff had failed to file an appeal or a cross appeal. The defendant also claims that it properly had challenged the agreement by filing a motion to modify because the issue of subject matter jurisdiction may be raised at any time.[15] We address each of the defendant's claims in turn.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an

circumstances of this matter, we fail to appreciate how this board could have reasonably reached the latter two [conclusions] of the . . . commissioner without also taking into consideration the first two . . . [2] the interests of judicial economy would be badly served indeed were we to have required the [plaintiff] to file an appeal or cross appeal of the first two of the . . . commissioner's [conclusions] despite an overall favorable outcome . . . [and 3] [t]he expectation that otherwise satisfied parties will file partial appeals within some sort of speculative vacuum is hardly consistent with the remedial nature and humanitarian spirit of the Workers' Compensation Act."

[15] Although not reviewed by the board, the defendant also claims that the commissioner improperly determined that the matter should proceed as though the plaintiff had brought a claim for workers' compensation benefits under chapter 568, and that the plaintiff accordingly was entitled to an award of statutory interest and attorney's fees. The defendant claims that this determination violated due process because the parties had not raised the issue of whether the plaintiff's claim for heart and hypertension benefits could be transformed into one for workers' compensation benefits. In response, the plaintiff counters that, pursuant to Salmeri v. Dept. of Public Safety, supra, 70 Conn. App. 326–34, the commissioner properly transformed the agreement. Because we conclude that the board was correct in determining that the commission did not have continuing jurisdiction to open the agreement, we need not reach this claim, which pertains solely to the conclusions of the commissioner upon her opening of the agreement.

incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board." (Internal quotation marks omitted.) *Marandino* v. *Prometheus Pharmacy*, 294 Conn. 564, 572, 986 A.2d 1023 (2010). "[W]e do not afford deference to an agency's interpretation of a statute when . . . the construction of a statute previously has not been subjected to 'judicial scrutiny' or to 'a governmental agency's time-tested interpretation . . . .' " *Donahue* v. *Veridiem, Inc.*, 291 Conn. 537, 547, 970 A.2d 630 (2009).

I

The defendant first contends that, under Practice Book § 61-8,[16] upon its appeal challenging the commissioner's third and fourth conclusions—namely, that it was proper to transform the agreement for heart and hypertension benefits into one for workers' compensation benefits, pursuant to chapter 568, and awarding to the plaintiff benefits owed—the plaintiff was required to file a cross appeal for the board to have jurisdiction to review the commissioner's first and second conclusions, namely, that the commission had continuing jurisdiction over the agreement and that it was void ab initio. Because the plaintiff failed to file a cross appeal, the defendant claims that the board lacked jurisdiction to review the commissioner's first two conclusions, which were not challenged in the defendant's appeal. Moreover, the defendant emphasizes that the first two con-

---

[16] Practice Book § 61-8 provides in relevant part: "Any appellee . . . aggrieved by the judgment or decision from which the appellant has appealed may jointly or severally file a cross appeal within ten days from the filing of the appeal. Except where otherwise provided, the filing and form of cross appeals, extensions of time for filing them, and all subsequent proceedings shall be the same as though the cross appeal were an original appeal. . . ."

clusions were "entirely separate in law and in fact" from the two conclusions it did not challenge, stating that "[t]he first two [conclusions] addressed the issues that had been presented and briefed by the parties, based on a stipulation of facts [while] [t]he latter two [conclusions] were an excursion by the [commissioner], embarked on by her sui generis, and neither advocated nor briefed by the parties, nor addressed in the record." In response, the plaintiff contends that the board properly reviewed the commissioner's decision, despite the fact that he had not filed an appeal or cross appeal, because: (1) the plaintiff was not aggrieved by the commissioner's decision under § 61-8; (2) the matter was interlocutory in that there was no actual relief granted to either party; and (3) even if an appeal or a cross appeal would have been preferable, the plain error doctrine applied, thus giving the board authority to review the entirety of the commissioner's decision. We agree with the plaintiff that he was not aggrieved by the commissioner's decision and, therefore, could not properly have filed an appeal or cross appeal to obtain review of the entirety of the commissioner's decision.

We begin our analysis of the defendant's claim by setting forth the applicable standard of review. Although in cases involving disputed facts we have stated that the issue of whether a party is aggrieved is a question of fact subject to the clearly erroneous standard of review; see, e.g., *Mystic Marinelife Aquarium, Inc.* v. *Gill*, 175 Conn. 483, 496, 400 A.2d 726 (1978); in the present case, because the matter was based on a stipulation of facts, only the legal conclusion of aggrievement is at issue. Accordingly, the issue of whether the plaintiff was aggrieved under Practice Book § 61-8 is a question of law, subject to plenary review. See, e.g., *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 565, 775 A.2d 284 (2001).

In workers' compensation cases, the procedure for appealing from the decision of a commissioner is the same as that followed in appealing from a decision of the Superior Court to this court. See General Statutes § 31-301 (e). In appeals from the Superior Court, if an appellee is aggrieved by the decision from which the appellant appealed, the appellee may file a cross appeal within ten days of the filing of the appeal. Practice Book § 61-8. "To be aggrieved, a party must have a specific personal and legal interest in the subject matter of the litigation and, further, that interest must be specially and injuriously affected by the decision at issue. . . . Given the latter requirement, [a]s a general rule, a party that prevails . . . is not aggrieved. . . . Moreover, [a] party cannot be aggrieved by a decision that grants the very relief sought. . . . Such a party cannot establish that a specific personal and legal interest has been specially and injuriously affected by the decision. . . . Nevertheless, we have recognized that [a] prevailing party . . . can be aggrieved . . . if the relief awarded to that party falls short of the relief sought." (Citations omitted; internal quotation marks omitted.) *State* v. *T.D.*, 286 Conn. 353, 358–59, 944 A.2d 288 (2008).

In the present case, the commissioner determined that, although § 7-433c did not apply to the plaintiff's claim for benefits, chapter 568 did apply and, accordingly, the commissioner ordered the parties to proceed with the administration of the plaintiff's benefits under that chapter. The commissioner also ordered the defendant to pay to the plaintiff benefits owed to him as a result of the defendant's unilateral termination of such benefits. Thus, the plaintiff prevailed, and was placed in the same or better position than he was previously as a result of the decision. As we have stated, when a party receives all the relief he has sought, "[he] cannot establish that a specific personal and legal interest has been specially and injuriously affected by the decision."

Id., 359. Accordingly, the plaintiff was not aggrieved and, thus, could not have filed a cross appeal.

The defendant contends, however, that the plaintiff was aggrieved by a portion of the commissioner's decision, namely, her conclusion that the agreement was void ab initio. Viewing the commissioner's decision in its totality, this conclusion does not alter the fact that the plaintiff was not "specially and injuriously affected by the decision"; id.; as, again, he was placed in the same or better position than he was in previously. See *Seymour* v. *Seymour*, 262 Conn. 107, 115, 809 A.2d 1114 (2002) ("[i]n contrast, as noted previously, where, as in this case, a litigant asks to be given either one form of relief or another, the litigant is not aggrieved if the trial court orders, in its entirety, one of the forms of relief requested"). Furthermore, "a litigant has no right to appeal a judgment in his or her favor merely for the purpose of having the judgment based on a different legal ground than that relied upon by the trial court, or to settle an abstract question of law." (Internal quotation marks omitted.) *State* v. *T.D.*, supra, 286 Conn. 359, quoting 5 Am. Jur. 2d 39, Appellate Review § 243 (2007). Additionally, "[a]s a general proposition, a party who has fully prevailed in the court below is not entitled to appeal from the judgment solely for the purpose of attacking as erroneous the reasons of the court or its conclusions of law." (Internal quotation marks omitted.) *State* v. *T.D.*, supra, 359, quoting annot., 69 A.L.R.2d 724, § 10 [b] (1960). We conclude, therefore, that the plaintiff's inability to appeal because he was not aggrieved under Practice Book § 61-8, could not deprive the board of jurisdiction to review the commissioner's two conclusions that were not specifically challenged in the defendant's appeal.

The defendant contends, nevertheless, that the commissioner's first two conclusions "were entirely separate in law and in fact" from the second two

conclusions. We disagree. As recognized by the board in its ruling on the defendant's motion for articulation, the commissioner's four conclusions were "inextricably linked" and not logically capable of being unbundled from each other, especially in light of the commissioner's use of the word "further" in conclusions three and four, which refer back to conclusions one and two.

## II

We next address the principal issue in this appeal, namely, the defendant's claim that the agreement was void for lack of subject matter jurisdiction because the plaintiff never qualified for benefits under § 7-433c and, therefore, that the board improperly determined that the defendant's motion to open and modify under § 31-315 was not a proper vehicle by which to raise the question of subject matter jurisdiction. The defendant contends that our case law establishes that this issue can be raised at any time, and must be resolved whenever it is raised. Specifically, the defendant contends that the board improperly concluded that the defendant was required to raise the issue of subject matter jurisdiction at the first opportunity presented, namely, when the agreement was first formed, and that, because the defendant had failed to do so, the agreement could not be opened under § 31-315. The defendant also contends that the issue of subject matter jurisdiction falls squarely within the scope of § 31-315. In response, the plaintiff contends that the board properly reversed the commissioner's decision to open and modify the agreement because: (1) the defendant had a previous opportunity to litigate any question of subject matter jurisdiction; and (2) § 31-315 did not provide a basis for opening the agreement in the present case. We disagree with the defendant and conclude that the board properly reversed the commissioner's decision opening and modifying the agreement.

We begin our analysis of the defendant's claim by setting forth the applicable standard of review. Whether § 31-315 permits a commissioner to open an agreement for a mistake of law that is subject matter jurisdictional in nature is a question of law over which our review is plenary.[17] See, e.g., *State* v. *Stenner*, 281 Conn. 742, 761–62, 917 A.2d 28, cert. denied, 552 U.S. 883, 128 S. Ct. 290, 169 L. Ed. 2d 139 (2007).

"Although the commission may modify awards under certain circumstances, its power to do so is strictly limited by statute." *Marone* v. *Waterbury*, 244 Conn. 1, 15, 707 A.2d 725 (1998). "Although strict finality is strongly favored, there are certain situations that demand a flexible approach allowing for modifications. . . .

"Section 31-315 allows the commission to modify an award in three situations. First, modification is permitted where the incapacity of an injured employee has increased, decreased or ceased, or . . . the measure of dependence on account of which the compensation is paid has changed . . . . Second, the award may be modified when changed conditions of fact have arisen which necessitate a change of [the award]. . . . Third,

---

[17] We note that *Gerte* v. *Logistec Connecticut, Inc.*, 283 Conn. 60, 61, 924 A.2d 855 (2007), like the present case, involved a respondent's attempt to challenge subject matter jurisdiction underlying previously entered awards. This court dismissed the appeal for lack of a final judgment but, while discussing the merits of the challenge, we noted that, although the issue of subject matter jurisdiction may be raised at any time, "[a]t least [when] the lack of jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if he did have such an opportunity, whether there are strong policy reasons for giving him a second opportunity to do so." Id., 63. In the present case, the matter did not involve a direct appeal of either the original or the supplemental agreement, neither of which were challenged by the defendant within twenty days as required by General Statutes § 31-301 (a). The agreements, therefore, became final judgments and, accordingly, were subject to challenge only by means of a collateral attack under § 31-315.

[t]he commissioner shall also have the same power to open and modify an award as any court of the state has to open and modify a judgment of such court. This provision extends the commission's power to open and modify judgments to cases of accident; *Hayden* v. *Wallace & Sons Mfg. Co.*, 100 Conn. 180, 188, 123 A. 9 (1923); to mistakes of fact; *Fair* v. *Hartford Rubber Works Co.*, 95 Conn. 350, 355, 111 A. 193 (1920); and to fraud; *Grabowski* v. *Miskell*, 97 Conn. 76, 84, 115 A. 691 (1921); *but not to mistakes of law. Kalinick* v. *Collins Co.*, [116 Conn. 1, 4–5, 163 A. 460 (1932)]." (Citations omitted; emphasis added; internal quotation marks omitted.) *Marone* v. *Waterbury*, supra, 244 Conn. 15–17.

In the present case, the first two grounds pursuant to which the commissioner has the authority to modify an agreement clearly are inapplicable. Moreover, our review of the record does not reveal any accident, mistake of fact or fraud that would satisfy the third ground for opening an agreement. Rather, we agree with the board that the parties' failure to recognize that § 7-433c did not apply to them was a mistake of law, which, based as it is on decisional law, is not within the scope of § 31-315. See *Hayden* v. *Wallace & Sons Mfg. Co.*, supra, 100 Conn. 186 ("equity will not interfere to grant a new trial in an action at law . . . unless the judgment was obtained through fraud, accident or mistake, *unconnected with any negligence or inattention on the part of the judgment debtor*" [emphasis added]); *O'Neil* v. *Honeywell, Inc.*, 66 Conn. App. 332, 338, 784 A.2d 428 (2001) ("[e]quity will not, save in rare and extreme cases, relieve against a judgment rendered as the result of a mistake on the part of a party or his [or her] counsel, unless the mistake is unmixed with negligence" [internal quotation marks omitted]), cert. denied, 259 Conn. 914, 792 A.2d 852 (2002).

We disagree with the defendant's argument that a mistake of law that is subject matter jurisdictional in

370

nature requires a different conclusion. Our decision in
*Hayden* v. *Wallace & Sons Mfg. Co.*, supra, 100 Conn.
180, is controlling. In *Hayden*, this court decided an
issue pertaining to the jurisdiction of the commission
over a voluntary agreement and supplemental award
(agreement) due to a mistaken assumption by the par-
ties. Id., 184. The specific question in *Hayden* was
whether the agreement could be opened under General
Statutes (1918 Rev.) § 5355,[18] the predecessor to § 31-
315, when the employer had determined, one year after
the parties had entered into the agreement, that the
claimants were independent contractors, not its
employees, at the time they incurred their injuries, and
thus not eligible for workers' compensation benefits.
Id. In denying the employer's motion to open and modify
the agreement, this court noted that, because of the
" 'negligence or inattention' " of the employer,
" '[e]quity will not . . . relieve against a judgment ren-
dered . . . .' " Id., 186. Thus, the court concluded that
§ 5355 did not apply to the circumstances, as the
agreement had not been "obtained through fraud, acci-
dent or mistake, unconnected with any negligence or
inattention on the part of the [employer] . . . ." (Inter-
nal quotation marks omitted.) Id. Similarly, in the pre-
sent case, the defendant failed to recognize, whether
through "negligence or inattenti[veness]," that its law
enforcement arrangements were not structured
according to § 7-274 and that, therefore, the plaintiff's
compensation claim should have been brought under
chapter 568, not § 7-433c. Accordingly, under *Hayden*,

[18] General Statutes (1918 Rev.) § 5355 provided in part that the commission
had the power to modify an award at any time when: "[a] the incapacity of
the injured employee has increased, decreased or ceased, or that the measure
of dependence, on account of which the compensation is paid, has changed
. . . [and] [b] changed conditions of fact have arisen which necessitate a
change of such agreement or award in order properly to carry out the spirit
of this chapter. . . ." Section 5355 also gave the commissioner "the same
power to open and modify an award as any court of the state has to open
and modify a judgment of such court."

we conclude that it was proper for the board to, in effect, "[estop] [the defendant] from abandoning the position it had deliberately taken . . . ." *Castro* v. *Viera*, 207 Conn. 420, 432 n.6, 541 A.2d 1216 (1988); see also *Connecticut Pharmaceutical Assn., Inc.* v. *Milano*, 191 Conn. 555, 560, 468 A.2d 1230 (1983) ("a party cannot belatedly contest subject matter jurisdiction when he was fully aware of the consequences of the [decree] and had the opportunity to fully litigate the question of jurisdiction in the original action, but, by stipulation, agreed without reservation to the terms of the orders which he now challenges" [internal quotation marks omitted]).

The defendant contends, however, that *Castro* v. *Viera*, supra, 207 Conn. 420, makes clear that a challenge to subject matter jurisdiction can be made at any time, and that *Hayden* was decided, not on jurisdictional grounds, but on equitable principles alone, and thus does not preclude the defendant from challenging the agreement based on subject matter jurisdiction. We disagree because *Castro* is distinguishable. Although we agree that *Castro* reaffirms the well established principle that questions regarding subject matter jurisdiction can be raised at any time during the original proceedings and direct appeals from that proceeding; see, e.g., *Kozlowski* v. *Commissioner of Transportation*, 274 Conn. 497, 502, 876 A.2d 1148 (2005); that principle does not alter the persuasive value of *Hayden* in informing our decision in the present case. *Castro*, unlike *Hayden*, dealt with the employer-employee relationship in the context of a motion to preclude during the original proceedings before the commissioner, not a motion to open a previously approved agreement, and, therefore, the applicability of § 31-315 was not at issue. *Castro* v. *Viera*, supra, 422. In fact, in *Castro*, we noted that *Hayden* was distinct, stating that we were "not now read[ing] . . . *Hayden* as inconsistent with

or controlling our disposition of the appeal now before us." Id., 432 n.6. Furthermore, in *Castro*, we noted that, in *Hayden*, "[w]e . . . indicat[ed] that the employer's failure to ascertain the facts showing its nonliability was due to its own negligence, that it was estopped from abandoning the position it had deliberately taken and that the commissioner could not do so under the statute." Id.

We similarly disagree with the defendant's reading of *Hayden* as not relevant to the issue of subject matter jurisdiction. In fact, *Hayden* dealt squarely with the very heart of subject matter jurisdiction in workers' compensation cases, namely, the employer-employee relationship. See *Castro* v. *Viera*, supra, 207 Conn. 433 ("The entire statutory scheme of the Workers' Compensation Act is directed toward those who are in the employer-employee relationship as those terms are defined in the act and discussed in our cases. That relationship is threshold to the rights and benefits under the act . . . . This requisite relationship was a jurisdictional fact to be proven in this case . . . ." [Internal quotation marks omitted.]). In denying the employer's motion to open the agreement based upon what was, in effect, a challenge to the commission's jurisdiction over the agreement, this court in *Hayden* reviewed the claim under the appropriate statutory framework, § 5355, and invoked equitable principles to reach its conclusion that, in the case of a mistake of law whereby the party seeking modification of an agreement has acted either negligently or inattentively, an agreement cannot be opened.

We also find persuasive our more recent decision in *Marone* v. *Waterbury*, supra, 244 Conn. 1, wherein this court considered whether a claimant was entitled to retroactive modification of benefits under General Stat-

utes §§ 7-433c and 7-433b (b),[19] following this court's decision in *Szudora* v. *Fairfield*, 214 Conn. 552, 559, 573 A.2d 1 (1990), which had expanded the definition of maximum cumulative " 'weekly compensation' " available under § 7-433b (b) to include overtime payments. Subsequently, the plaintiff sought retroactive recalculation of his award in accordance with *Szudora. Marone* v. *Waterbury*, supra, 4. In upholding denial of the plaintiff's motion to modify the award, this court relied on *Kalinick* v. *Collins Co.*, supra, 116 Conn. 1,[20]

---

[19] General Statutes § 7-433b (b) provides: "Notwithstanding the provisions of any general statute, charter or special act to the contrary affecting the noncontributory or contributory retirement systems of any municipality of the state, or any special act providing for a police or firemen benefit fund or other retirement system, the cumulative payments, not including payments for medical care, for compensation and retirement or survivors benefits under section 7-433c shall be adjusted so that the total of such cumulative payments received by such member or his dependents or survivors shall not exceed one hundred per cent of the weekly compensation being paid, during their compensable period, to members of such department in the same position which was held by such member at the time of his death or retirement. Nothing contained in this subsection shall prevent any town, city or borough from paying money from its general fund to any such member or his dependents or survivors, provided the total of such cumulative payments shall not exceed said one hundred per cent of the weekly compensation." Although § 7-433b was the subject of technical amendments in 2007; see Public Acts 2007, No. 07-161, § 1; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision.

[20] In *Kalinick* v. *Collins Co.*, supra, 116 Conn. 3, an award was challenged on the basis of a change in law, albeit one not subject matter jurisdictional in nature. The plaintiff had been awarded one half of his weekly wages for the twenty-six week time period prior to the point in time at which he had ceased working at his occupation as a wet grinder. Id., 2. Several months later, this court decided *Rousu* v. *Collins Co.*, 114 Conn. 24, 157 A. 264 (1931), and concluded that the average weekly wage in such cases should be based on the twenty-six week period preceding the onset of the disability, rather than the twenty-six weeks preceding the cessation of the type of work which had caused the disability. *Kalinick* v. *Collins Co.*, supra, 2. Thereafter, the defendant sought to have the plaintiff's award opened and modified, on the basis of the new ruling, and the trial commissioner granted the request. Id., 2–3. This court, following *Hayden*, reversed the decision of the trial commissioner, concluding that "a reopening and modification based upon a mistake of law, as here, would not be permissible unless the

concluding that, although § 31-315 provides limited circumstances in which an award may be modified, it "does not authorize modifications based on a new interpretation of law such as that contained in *Szudora*." *Marone* v. *Waterbury*, supra, 15. This court also noted that "allowing retroactive recalculations of awards in nonpending cases . . . would plunge the workers' compensation system into a state of paralytic uncertainty. Employers and insurers, as well as injured employees, would find it difficult, if not impossible, to plan for the future if judgments could be opened and retroactively modified on the basis of unanticipated changes in the law." Id., 18–19.

This court, therefore, previously has concluded that even an unanticipated change in law does not warrant opening an award under § 31-315. In the present case, the issue was not an unanticipated change in law but, rather, a mistake of law, whereby the parties, either through " 'negligence or inattention' "; *Hayden* v. *Wallace & Sons Mfg. Co.*, supra, 100 Conn. 186; had made an erroneous assumption regarding the appropriate statutory context for the plaintiff's award of benefits. Indeed, at the time of the agreement, even prior to the release of *Genesky* v. *East Lyme*, supra, 275 Conn. 246, several of the board's decisions relied on the interpretation of §§ 7-433c and 7-274 set forth by the Appellate Session of the Superior Court in *Zimmer* v. *Essex*, supra, 38 Conn. Sup. 419. See, e.g., *Crossway* v. *Newington*, No. 978, CRD-6-90-2 (June 28, 1991); *Zimmer* v. *Meriden*, No. 253, CRB-6-83 (February 5, 1986); *Gallucci* v. *Waterbury*, No. 313, CRD-5-84 (July 24, 1984); *Watson* v. *Bristol*, No. 315, CRD-6-84 (July 24, 1984); see also

control over its award for correction of errors of law, as distinguished from mistakes of fact, which a court possesses over its judgment only during the term in which it is rendered, is held to continue in the commissioner during the entire compensation period. Such an extension would be inconsistent with and subversive of the considerations which have actuated the generally recognized limitations of the powers of courts over their judgments." Id., 8.

*Genesky* v. *East Lyme,* supra, 250 n.6 ("[a]lthough . . . [we do] not rely on *Zimmer* as precedent . . . the court in *Zimmer* interpreted §§ 7-433c and 7-274 under facts similar to those of the present case"). In fact, the defendant concedes on appeal that its position was premised not on the fact that *Genesky* clarified the scope of § 7-433c but, rather, "that the issue of subject matter jurisdiction can be raised at any time, and must be resolved whenever it is raised . . . ." Accordingly, we agree with the board that the parties' assumptions regarding the applicability of § 7-433c to the original and supplemental agreements was, "in retrospect inaccurate," but also that, "given the stipulated facts as presented at the time of signing, the decisions of the respective trial commissioners to approve the [agreements] were eminently reasonable." On the basis of our review of the record, we conclude, therefore, that the board properly determined that § 31-315 did not permit the opening of the agreement.

The decision of the compensation review board is affirmed.

In this opinion the other justices concurred.